1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10

11

12

13

GREGORY DAVID WERBER ,

                    Petitioner,

    v.

RESIDENTIAL REENTRY MANAGER ,

                    Respondent.

Case No. C22-1066-TL-SKV

REPORT AND RECOMMENDATION

14

15

16

17

18

19

20

### I.     INTRODUCTION

On December 16, 2019, Petitioner pleaded guilty to Conspiracy to Commit Money Laundering and two substantive counts of Money Laundering, both in violation of 18 U.S.C. § 1956. *USA v. Hernandez, et al.*, CR18-5579-RAJ, Dkt. 969–70.  In May 2021, Petitioner was sentenced to a 58-month prison term, followed by three years of supervised release. *Id.* at Dkt. 1342–43.  Petitioner spent approximately a year in prison before the Bureau of Prisons ("BOP") transferred him to prerelease custody in a residential reentry center in Seattle.  Dkt. 1 at 4 ¶ 9(c).

21

22

23

A month later, Petitioner was transferred to home confinement in Seattle.[1]  *See id.* at 4 ¶ 9(d); Dkt. 4.

On August 1, 2022, Petitioner filed the present 28 U.S.C. § 2241 writ of habeas corpus action, Dkt. 1, in which he contends that the BOP miscalculated the time credits he is entitled to under the First Step Act of 2018, 18 U.S.C. § 3632(d)(4) ("FSA").  Per Petitioner, if those credits were properly calculated and applied to his sentence, he would have been entitled to immediate release from custody to supervised release when he filed this action.  Dkt. 1 at 5–6.  Respondent Residential Reentry Manager denies that Petitioner's FSA time credits were improperly calculated and moves to dismiss this action on the ground that Petitioner has not exhausted his administrative remedies relative this computational dispute.  Dkt. 14 at 2.

Currently pending before the Court are Respondent's Motion to Dismiss, Dkt. 14; and Petitioner's Motion for Expedited Evidentiary Hearing, Dkt. 3; Motion to Seal, Dkt. 5;[2] Motion

---

[1] Respondent indicates that by the BOP's calculations, Petitioner was scheduled to be released from home confinement on November 1, 2022. Dkt. 14 at 6.  It therefore appears to the Court that Petitioner is no longer in custody.  Even so, this action is not moot because Petitioner's sentence includes a term of supervised release, which could be reduced by a ruling in his favor.  *See United States v. Verdin*, 243 F.3d 1174, 1178 (9th Cir. 2001); *Fraley v. U.S. Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993).

[2] "There is a strong presumption of public access to the court's files."  LCR 5(g).  Local Civil Rule 5(g) outlines the requirements for filing a document under seal in this District.  A motion to seal a document must include certain information, including:

A specific statement of the applicable legal standard and the reasons for keeping a document under seal, including an explanation of:

i. the legitimate private or public interests that warrant the relief sought;

ii. the injury that will result if the relief sought is not granted; and

iii. why a less restrictive alternative to the relief sought is not sufficient

LCR 5(g)(3)(B).

Here, Petitioner's Motion to Seal provides only that the document he seeks to seal "contains private information that should not be on the public docket."  Dkt. 5 at 1.  *See also* Dkt. 4 at 1 (providing that Petitioner "redacted his home address in his Petition for Writ of Habeas Corpus . . . due to privacy and safety concerns . . . .").  This is insufficient to overcome the strong presumption in favor of public access to court files.  Petitioner's Motion to Seal, Dkt. 5, is denied.

for Leave to File Surreply, Dkt. 21;[3] Motion for Leave to File Over-Length Motions and Briefs re Surreply, Dkt. 22; and Motion to Correct Docket Sheet, Dkt. 23.

The Court, having reviewed the Petition for Writ of Habeas Corpus, Respondent's Motion, and the balance of the record, concludes that this action should be dismissed without prejudice for failure to exhaust. Further, the Court denies Petitioner's Motion for Expedited Evidentiary Hearing, Dkt. 3, and Motion to Correct Docket Sheet, Dkt. 23, as moot; and denies Petitioner's Motion to Seal, Dkt. 5; Motion for Leave to File Surreply, Dkt. 21; and Motion for Leave to File Over-Length Motions and Briefs re Surreply, Dkt. 22. Finally, the Court strikes Petitioner's surreply, Dkt. 20, from the record.

## II.    BACKGROUND

### A.    FSA Time Credits

Congress enacted the FSA on December 21, 2018. Pub. L. No. 115-391, 132 Stat. 5194. The FSA called for the implementation of a "risk and needs assessment" system to evaluate federal inmates' recidivism risk and included a directive to establish evidence-based recidivism reduction programs. 18 U.S.C. § 3632(a)–(b). The FSA also established various incentives for inmates to participate in its anti-recidivism programming. 18 U.S.C. § 3632(d). One such incentive was the awarding of "time credits" to "be applied toward time in prerelease custody or

---

[3] Local Civil Rule 7(g) permits a party to file a surreply to request that the Court strike material contained in an opposing party's reply brief. Any such surreply, however, "shall be strictly limited to addressing the request to strike." LCR 7(g)(2). "Extraneous argument or a surreply filed for any other reason will not be considered." *Id.*; *Gauthier v. Twin City Fire Ins. Co.*, No. 14-cv-00693, 2015 WL 12030097, *1 (W.D. Wash. July 15, 2015). Here, the surreply Petitioner seeks to file does not address a request to strike and instead mainly repeats the arguments made in opposition to Respondent's Motion to Dismiss. The Court therefore declines to consider it. Petitioner's Motion for Leave to File Surreply, Dkt. 21, and Motion for Leave to File Over-Length Motions and Briefs re Surreply, Dkt. 22, are denied, and Petitioner's surreply, Dkt. 20, is stricken from the record. Further, Petitioner's Motion to Correct Docket Sheet, Dkt. 23, which asks the Court to correct the docket entry pertaining to Petitioner's surreply, is denied as moot.

1   supervised release" upon eligible inmates' successful completion of anti-recidivism

2   programming.[4]  18 U.S.C. § 3632(d)(4)(C).  Eligible inmates receive ten days of FSA time

3   credits for every thirty days of anti-recidivism programming they successfully complete.  18

4   U.S.C. § 3632(d)(4)(A)(i).  If the BOP determines that an inmate is at a "minimum" or "low"

5   risk of recidivating and the inmate has not increased his risk of recidivism over two consecutive

6   risk assessments, then he earns an additional five days of time credits for every thirty days of

7   successfully completed programming.  18 U.S.C. § 3632(d)(4)(A)(ii).

8         Under the FSA, the BOP "shall transfer eligible prisoners, as determined under section

9   3624(g), into prerelease custody or supervised release."  18 U.S.C. § 3632(d)(4)(C).  An "eligible

10  prisoner" is defined, in part, as a prisoner who has (1) earned FSA time credits "in an amount

11  that is equal to the remainder of the prisoner's imposed term of imprisonment"; (2) "shown

12  through the periodic risk reassessments a demonstrated recidivism risk reduction or has

13  maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment"; and

14  (3) had "the remainder of the prisoner's imposed term of imprisonment computed under

15  applicable law . . . ."  18 U.S.C. § 3624(g)(1)(A)–(C).  Additionally, in order to be eligible for

16  transfer from prerelease custody to supervised release, a prisoner's last risk assessment must

17  show him "to be a minimum or low risk to recidivate."  18 U.S.C. § 3624(g)(1)(D)(ii).  If a

18  prisoner meets all of these requirements, the BOP must transfer him from prerelease custody to

19  supervised release.  *See* 18 U.S.C. §3632(d)(4)(C).  In other words, if an inmate has accrued

20  sufficient FSA time credits and he meets the FSA's risk assessment and other statutory

21  requirements, the BOP is required to transfer the inmate from prerelease custody to supervised

22  release.

23

---

[4] Several classes of prisoners are precluded from earning time credits under the FSA, *see* 18 U.S.C. §§3632(d)(4)(D), but Petitioner does not belong to one of them, *see* Dkt. 14 at 2 n.1.

1      The BOP was given 210 days following the FSA's enactment to develop the mandated

2   "risk and needs assessment system."  18 U.S.C. § 3632(a).  The BOP then had until January 15,

3   2020, to conduct an "initial intake risk and needs assessment for each prisoner . . . and begin to

4   assign prisoners to appropriate evidence-based recidivism reduction programs based on that

5   determination."  18 U.S.C. § 3621(h)(1).  The FSA also created a phase-in period of up to two

6   years following the BOP's completion of the initial risk and needs assessment, during which

7   time the BOP was to "provide such evidence-based recidivism reduction programs and

8   productive activities for all prisoners . . . ."  18 U.S.C. § 3621(h)(2)(A).

9      The BOP implemented its final rules regarding the earning and awarding of FSA time

10  credits on January 19, 2022, 87 Fed. Reg. 2705-01, 2022 WL 159155, which are codified at 28

11  C.F.R. §§ 523.40–523.44.  These rules provide that "an eligible inmate who successfully

12  participates in Evidence-Based Recidivism Reduction [] Programs or Productive Activities []

13  that are recommended based on the inmate's risk and needs assessment may earn FSA Time

14  Credits to be applied toward prerelease custody or early transfer to supervised release under 18

15  U.S.C. 3624(g)."  28 C.F.R. §§ 523.40(b).

16      B.    BOP's Grievance Procedure

17      The BOP has established an Administrative Remedy Program through which prisoners

18  can seek formal review of a complaint which relates to "any aspect of [their] own

19  confinement[,]" 28 C.F.R. § 542.10(a), including the BOP's computation of their sentences, *see*

20  *United States v. Wilson*, 503 U.S. 329, 335 (1992).  Subject to limited exceptions not applicable

21  here, *see* 28 C.F.R § 542.14(d), a prisoner "shall first present an issue of concern informally" to

22  prison staff, 28 C.F.R. § 542.13(a).  If dissatisfied with prison staff's informal response, the

23  prisoner must then formally complain to the prison's warden.  *See* 28 C.F.R. § 542.14(a)–(c).  If

1   dissatisfied with the warden's response, the prisoner may appeal to the Regional Director of the

2   region in which he is confined.  28 C.F.R. § 542.15(a).  And if the prisoner is dissatisfied with

3   the Regional Director's response, he may appeal to the BOP's General Counsel.  *Id.*  "Appeal to

4   the General Counsel is the final administrative appeal."  *Id.*

III.    <u>DISCUSSION</u>

6       Respondent argues the Petition should be dismissed because Petitioner failed to utilize

7   the BOP's administrative appeals procedures before filing this lawsuit and therefore has not

8   exhausted his administrative remedies.  *See* Dkt. 14.  Petitioner concedes that he did not exhaust

9   his administrative remedies, but asks the Court to waive the exhaustion requirement because

10  Respondent has prevented him from "obtaining a timely and meaningful administrative remedy"

11  and because "requiring administrative remedy procedures would be inadequate, not efficacious,

12  futile, highly prejudicial, and cause irreparable injury to petitioner . . . ."  Dkt. 15 at 6.

13      As a general matter, "[f]ederal prisoners are required to exhaust their federal

14  administrative remedies prior to bringing a petition for a writ of habeas corpus in federal court."

15  *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986); *see also Ward v. Chavez*, 678 F.3d 1042,

16  1045 (9th Cir. 2012); *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004).  Although exhaustion

17  is not a jurisdictional requirement with which a petitioner must comply before bringing a § 2241

18  habeas action, *Ward*, 678 F.3d at 1045, a court's discretion to waive the exhaustion requirement

19  is "not unfettered[,]" *Laing*, 370 F.3d at 998.  There are good reasons for requiring a petitioner to

20  exhaust administrative remedies before pursuing an action in district court:

21          [T]he requirement of exhaustion of remedies [aids] judicial review by allowing the
            appropriate development of a factual record in an expert forum; conserve[s] the
22          court's time because of the possibility that the relief applied for may be granted at
            the administrative level; and allow[s] the administrative agency an opportunity to
23          correct errors occurring in the course of administrative proceedings.

1    *Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983).  Even so, the Court can waive the

2    exhaustion requirement if pursuing administrative remedies would be futile.  *Ward*, 678 F.3d

3    1045 (quoting *Fraley v. U.S. Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993)).

4          Petitioner argues the exhaustion requirement should be waived in this case because the

5    BOP does not apply FSA time credits until "the day the actual release day arrives," meaning he

6    has "no standing or administrative remedy available to him until he is overdue for release and

7    illegally confined."  Dkt. 15 at 6 n.1.  Petitioner further contends that exhaustion should be

8    waived as futile because he is already overdue for release, and because requiring him to exhaust

9    at this juncture would result in irreparable injury.  *Id.* at 6 n.2

10         The Court is not persuaded that waiving the exhaustion requirement is appropriate here.

11   Petitioner cites no statute or BOP policy or regulation to support his assertion that the BOP does

12   not apply FSA time credits until a prisoner's release date arrives.  Instead, he cites *Jefferson v.*

13   *Thompson*, No. 21-cv-01783-TLN-CKD, 2022 WL 1215441, at *3 (E.D. Cal. Apr. 25, 2022),

14   report and recommendation adopted, No. 21-cv-01783-TLN-CKD, 2022 WL 2758625 (E.D. Cal.

15   July 14, 2022) (finding that the case was not yet ripe for review because "the BOP has not yet

16   calculated petitioner's [earned time credits] because his release date is too far in the future and

17   the agency has chosen to calculate FSA sentencing credits on a rolling basis with those with an

18   anticipated release date within 45 days given first priority"); and *Turner v. Heisner*, No. 22-cv-

19   00178-PHX-JAT (ESW), 2022 WL 2195348, at *3 (D. Ariz. May 16, 2022), report and

20   recommendation adopted sub nom., *Turner v. Cole*, No. 22-cv-00178-PHX-JAT, 2022 WL

21   2192212 (D. Ariz. June 17, 2022) (finding that the case was not yet ripe for review because

22   under the FSA, earned time credits can be applied toward prerelease custody or supervised

23   release only when accumulated credits are equal to the remainder of the sentence, and the

number of credits the petitioner alleged he had were not equal to the remainder of his sentence). Dkt. 15 at 6 n.1.  Neither case supports Petitioner's proposition.

Moreover, whether Petitioner has standing to bring a legal action in court challenging his FSA time credit calculation and whether the BOP's administrative appeals process is available to him to bring such a challenge are not one and the same.  The record indicates that in February 2022, Petitioner was told he had 76 days of FSA time credits.  Dkt. 15-1 at 56.  Two months later, in April 2022, Petitioner asked for a "print out" of his FSA time credits, and the BOP again informed him that he "had 76 days of [time credits] applied."  *Id.* at 58.  But per Petitioner, he automatically accumulated fifteen FSA time credits for every month he was incarcerated.  Dkt. 1 at 5 ¶ 9(f); Dkt. 15 at 10 & n.4.  Thus, per his approach to time credit calculation, he should have had approximately thirty more time credits in April 2022 than he did in February 2022.  Given this, at least as early as April 2022, Petitioner had notice that the manner in which he was calculating his FSA time credits did not comport with the manner in which the BOP was calculating them, and he could have submitted an administrative grievance at that time. Petitioner did not, instead waiting until a month after his purported release date to file this court action.[5]

Petitioner cites *Butler v. Bradley*, No. 20-cv-11211-DMG-RAO, 2021 WL 945252, at *2–3 (C.D. Cal. Feb. 22, 2021), report and recommendation adopted, No. 20-cv-11211-DMG-RAO, 2021 WL 5596151 (C.D. Cal. Nov. 30, 2021); and *Goodman v. Ortiz*, No. 20-cv-7582-RMB, 2020 WL 5015613, at *2–3 (D.N.J. Aug. 25, 2020), in support of his argument that requiring exhaustion would be futile and result in irreparable injury.  Dkt. 15 at 6 n.2

---

[5] But even as early as February 2022, Petitioner should have been on notice that he and the BOP were not calculating his FSA time credits in the same manner.  Per Petitioner's calculations, as of January 20, 2022, he should have had 103.5 days of FSA time credits, not the seventy-six days he was told he had in February 2022.  *See* Dkt. 15 at 12.

REPORT AND RECOMMENDATION - 8

1    In *Butler*, the court found that "Petitioner's allegation that his case manager and other

2    prison officials refused to provide him with grievance forms supports a finding that the

3    exhaustion requirement should be waived . . . ." *Butler*, 2021 WL 945252, at *3.  The court

4    further noted that "if Petitioner's claim were meritorious, he would suffer irreparable injury from

5    his continued incarceration." *Id.*  In *Goodman*, the court found that exhaustion was not required

6    because the case presented "a narrow dispute of statutory construction which is exempt from the

7    exhaustion requirement." *Goodman*, 2020 WL 5015613, at *3.  Further, because the court found

8    that habeas relief should be granted, it waived exhaustion. *Id.*

9    Here, unlike in *Butler*, Petitioner does not allege that anyone interfered with his efforts to

10   exhaust his claim, nor does he provide any explanation for his failure to exhaust.  And unlike in

11   *Goodman*, this case does not present a narrow issue of statutory construction that is excused from

12   the exhaustion requirement.  While it may be true that Petitioner would suffer irreparable injury

13   if his claim were meritorious, unlike in *Goodman*, Petitioner has failed to demonstrate that it is.

14   Indeed, even if the Court were to waive the exhaustion requirement, Petitioner has not met his

15   burden of proving that he is entitled to relief.[6]

16   Petitioner alleges that his "sworn petition, response, and evidence shows he earned 15

17   days a month, totaling 188.5 days of Earned Time Credit . . . under the [FSA] from June 28,

18   2021[,] through July 9, 2022, and is therefore illegally confined and overdue for release, and was

19   entitled to be released from his Term of Imprisonment and begin his Term of Supervised Release

20

21   _____

     [6] Petitioner argues the BOP's failure to provide documentation substantiating its claims does not
22   comply with the Court's Order for Service and Return, Dkt. 8, which ordered the BOP to "show cause why
     a writ of habeas corpus should not be granted," Dkt. 15 at 8 (quoting Dkt. 8 at 1).  But "it is the petitioner
     who bears the burden of proving his case" in federal habeas proceedings. *Lambert v. Blodgett*, 393 F.3d
23   943, 969 n.16 (9th Cir. 2004); *Caver v. Straub*, 349 F.3d 340, 351 (6th Cir. 2003) ("[I]n a habeas proceeding
     the petitioner 'has the burden of establishing his right to federal habeas relief and of proving all facts
     necessary to show a constitutional violation.'") (quoting *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir.
     2001)).

1    on July 9, 2022." Dkt. 15 at 6.  He argues that he "automatically earns 15 days of [earned time

2    credit] a month unless he formally opts out or refuses to participate in a program offered to him

3    by the BOP or incurs a disciplinary infraction and is placed in disciplinary housing—none of

4    which has ever happened here . . . ." *Id.* at 7.  And he contends he successfully participated[7] in

5    all anti-recidivism programming offered to him "and more," and that he has always been

6    classified as "low" risk of recidivism, meaning he has earned time credits at the rate of fifteen

7    days per month since June 28, 2021.  *Id.* at 9–10.

8           This is insufficient to demonstrate that Petitioner is entitled to relief.  Petitioner

9    seemingly alleges he is entitled to time credits for participating in his general prison work

10   assignments, i.e., his work as a chapel orderly.  Dkt. 15 at 9; Dkt. 15-1 at 25–26, 28–30, 32–34.

11   But there is no indication in the record that these work assignments qualify as "evidence-based

12   recidivism reduction programming" or "productive activities" such that they entitle Petitioner to

13   accrue time credits under the FSA.[8]  *See* 28 C.F.R. § 523.41(a)–(b) (defining "evidence-based

14   recidivism reduction program" and "productive activity").  In fact, the record lists these work

15   assignments separately from Petitioner's "Current FSA Assignments," Dkt. 15-1 at 29, 33,

16   arguably indicating they do not qualify as anti-recidivism programming for the purposes of the

17   FSA.

18

19           [7] The parties dispute whether "successful participation" or "successful completion" of anti-
20   recidivism programming is the appropriate standard for determining whether an inmate has earned time
     credits under the FSA.  Dkt. 15 at 9; Dkt. 17 at 5–8.  They also dispute whether, if successful participation
21   is the standard, Petitioner must demonstrate how many days he actually participated in qualifying
     programming in order to earn time credits.  Dkt. 15 at 7; Dkt. 17 at 6–7.  Because it does not change the
     Court's assessment, the Court declines to reach this issue.

22           [8] Similarly, Petitioner provides a certificate indicating he successfully completed a drug education
23   program in May 2022, Dkt. 15-1 at 38, and alleges the BOP has not accounted for this program in its
     allocation of his FSA time credits, *see* Dkt. 15 at 7, 9.  But the record does not show whether the BOP
     considered this drug education program to be an "evidence-based recidivism reduction program" or
     "productive activity" within the meaning of the FSA.

1    But even assuming Petitioner's work assignments do qualify for FSA time credits, it is

2    unclear from the record whether Petitioner "successfully participated" in them.  Whether an

3    inmate has "successfully participated" in anti-recidivism programming "requires a determination

4    by [BOP] staff that an eligible inmate . . . has complied with the requirements of each particular

5    [evidence-based recidivism reduction program] or [productive activity]."  28 C.F.R.

6    § 523.41(c)(2).  While Petitioner alleges he has successfully participated in every evidence-based

7    recidivism reduction program and productive activity offered to him "and more," and that the

8    BOP has failed to adequately account for the programming and activities in calculating his time

9    credits, Dkt. 15 at 9–12, he provides no evidence indicating the BOP has determined he

10   successfully participated in such programming and activities.  The Court therefore cannot assess

11   Petitioner's successful participation.

12   Moreover, it is unclear from the record the rate at which Petitioner is entitled to accrue

13   FSA time credits.  Petitioner alleges he is entitled to accrue credits at a rate of "15 days a

14   month."  *See, e.g.*, Dkt. 15 at 10–11.  But an inmate accrues credits at this rate only if he is

15   classified "at a minimum or low risk for recidivating" and "over 2 consecutive [risk]

16   assessments, has not increased [his] risk of recidivism."  18 U.S.C. § 3632(d)(4)(A)(ii); *see also*

17   28 C.F.R. § 523.42(c)(2).  Petitioner alleges he has "always" been classified a "'low' risk of

18   recidivism, and his 'low' risk score has never increased."  Dkt. 15 at 10.  While it may be true

19   that the record generally indicates Petitioner has been assessed a low risk of recidivism, Dkt. 15-

20   1 at 26, 30, 34, it is unclear whether Petitioner has been classified as such over two consecutive

21   risk assessments.  Petitioner only submits his initial classification from July 2021, one FSA risk

22   assessment from December 2021, and documents completed over a period of several months

23   after this December 2021 risk assessment indicating Petitioner is low risk.  *Id.* at 25–26, 28–30,

32–34, 36.  But because Petitioner has not indicated how often the BOP conducts risk

assessments and when the most recent risk assessments were conducted, the Court cannot discern

Petitioner's risk classification "over the most recent two consecutive risk and needs assessments"

from this record.  8 C.F.R. § 523.42(c)(2)(ii).  Thus, the Court cannot adequately assess the rate

at which Petitioner is eligible to accrue FSA time credits.

Finally, Petitioner "requests an evidentiary hearing if [the] requested relief cannot be

granted on the current record."  Dkt. 15 at 1.  But because "the record makes clear that

[Petitioner] failed to exhaust his administrative remedies, no evidentiary hearing on this issue . . .

is necessary."  *Martinez*, 804 F.2d at 571.  Again, "the requirement of exhaustion of remedies

[aids] judicial review by allowing the appropriate development of a factual record in an expert

forum; conserve[s] the court's time because of the possibility that the relief applied for may be

granted at the administrative level; and allow[s] the administrative agency an opportunity to

correct errors occurring in the course of administrative proceedings."  *Ruviwat,* 701 F.2d at 845.

"This is exactly the type of case in which exhaustion of administrative remedies should be

required.  There has not been the development of a factual record which would enable this court

to review the [BOP's] decision."  *Chua Han Mow v. United States*, 730 F.2d 1308, 1313–14 (9th

Cir. 1984) (affirming dismissal of habeas action on failure to exhaust grounds and denying

petitioner's request for an evidentiary hearing).   And because the record "refutes the petitioner's

factual allegations or otherwise precludes habeas relief, the district court is not required to

conduct an evidentiary hearing."  *Vela v. McGrath*, No. 08-cv-082-JPH, 2009 WL 277535, at *4

(E.D. Wash. Feb. 4, 2009) (citing *Estrada v. Scribner*, 512 F.3d 1227, 1239 (9th Cir. 2008)).

Petitioner should not be entitled to circumvent his failure to exhaust his administrative remedies

by resorting to an evidentiary hearing in this Court.

1    The Court therefore recommends that Petitioner's Petition for Writ of Habeas Corpus,

2    Dkt. 1, be dismissed without prejudice to Petitioner exhausting his administrative remedies

3    relative to this dispute.[9]

4    IV.    CONCLUSION

5    Based on the forgoing, the Court recommends that Petitioner's § 2241 Petition for Writ

6    of Habeas Corpus, Dkt. 1, be dismissed without prejudice.  Further, the Court denies Petitioner's

7    Motion for Expedited Evidentiary Hearing, Dkt. 3, and Motion to Correct Docket Sheet, Dkt. 23,

8    as moot; and denies Petitioner's Motion to Seal, Dkt. 5; Motion for Leave to File Surreply, Dkt.

9    21; and Motion for Leave to File Over-Length Motions and Briefs re Surreply, Dkt. 22.  Finally,

10   the Court strikes Petitioner's surreply, Dkt. 20, from the record.

11   A proposed Order accompanies this Report and Recommendation.

12   V.    OBJECTIONS

13   Objections to this Report and Recommendation, if any, should be filed with the Clerk and

14   served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report

15   and Recommendation is signed.  Failure to file objections within the specified time may affect

16   your right to appeal.  Objections should be noted for consideration on the District Judge's

17   motions calendar for the third Friday after they are filed.  Responses to objections may be filed

18

19   [9] Petitioner includes a copy of *Stewart v. Snider*, No. 22-cv-00294-MHH-JHE, 2022 WL 2032305
     (N.D. Ala. May 10, 2022), report and recommendation adopted, No. 22-cv-294-MHH-JHE, 2022 WL
20   2019965 (N.D. Ala. June 6, 2022), in the record he submits to the Court.  Dkt. 15-1 at 62–68.  That case
     also involved a dispute over whether the BOP had properly calculated the petitioner's FSA time credits,
21   and resulted in the court excusing the petitioner's failure to exhaust his administrative remedies and granting
     the petitioner habeas relief.  *Id.* at *2, 7.  However, in that case, the petitioner had "attempted to comply
     with the BOP's administrative remedy process, but he was released to home confinement before being able
     to submit the proper forms" and "did not get a timely response from the BOP" when pursuing his claim.
22   *Id.* at *2.  Further, the respondent did not dispute that the petitioner had earned additional time credits
     between the BOP's last calculation and the relevant time period "which could result in an earlier release
23   date."  *Id.* at *7.  By contrast, here, Petitioner made no effort to exhaust his administrative remedies and
     Respondent does dispute Petitioner's alleged entitlement to an earlier release date based on time credits
     accrued under the FSA.  Thus, *Stewart* does not support granting Petitioner relief in this case.

REPORT AND RECOMMENDATION - 13

within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **December 2, 2022**.


Dated this 9th day of November, 2022.


S. KATE VAUGHAN
United States Magistrate Judge